IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHAEL GUREVICH and ELENA GUREVICH, on behalf of themselves and all others similarly situated, | ) ) ) ) | Case No. 1:11-cv-1890 |
| Plaintiffs, | ) ) | Judge Sharon J. Coleman |
| | ) | Magistrate Judge Nan. R. Nolan |
| v. | ) ) | |
| COMPAGNIA AEREAS ITALIANA, SPA d/b/a ALITALIA AIRLINES | ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' RESPONSE TO MOTION TO DISMISS

Jennifer W. Sprengel
**CAFFERTY FAUCHER LLP**
30 N. LaSalle Street, Suite 3200
Chicago, IL 60602
Tel:  (312) 782-4880
Fax:  (312) 782-4485

Hank Bates
**CARNEY WILLIAMS BATES
BOZEMAN & PULLIAM, PLLC**
11311 Arcade Drive, Suite 200
Little Rock, AR 72212
Tel: (501) 312-8500
Fax: (501) 312- 8505

Vladimir M. Gorokhovsky
**GOROKHOVSKY LAW OFFICE, LLC**
6045 North Green Bay Avenue, Suite 2A
Glendale, WI  53209
Tel:  (414) 218-1870

*Counsel for Plaintiffs and Proposed Class*

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION .....................................................................................................1

STATEMENT OF FACTS .........................................................................................2

ARGUMENT .............................................................................................................2

I.      ALITALIA'S GENERAL CONDITIONS OF CARRIAGE AND DOT
REGULATIONS STATE THAT ALITALIA'S CONTRACTUAL
RELATIONSHIP WITH PASSENGERS IS CONTROLLED BY NOTICED
CONDITIONS OF CARRIAGE, **NOT** UNNOTICED TARIFFS ........................2

II.     PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY THE AIRLINES
DEREGULATION ACT .........................................................................................6

        A.     In *Wolens*, the Supreme Court Explicitly Held that Breach
of Contract Claims are Not Preempted by the ADA.....................................6

        B.     Alitalia Fails to Identify Any State Law or Policy from
Which Plaintiffs Derive Their Claims .........................................................8

        C.     Preemption Here Does Not Fulfill the Congressional Intent
of the ADA...................................................................................................9

III.     PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY THE MONTREAL
CONVENTION ...................................................................................................10

IV.     THIS COURT SHOULD NOT ACCEPT ALITALIA'S
INVITATION TO ABDICATE JURISDICTION ON
PRINCIPLES OF INTERNATIONAL COMITY .................................................12

CONCLUSION........................................................................................................15

# TABLE OF AUTHORITIES

CASES:

*AAR Int'l, Inc. v. Nimelias Enters. S.A.*
    250 F.3d 510 (7th Cir. 2001) ......................................................................12

*American Airlines v. Wolens,*
    513 U.S. 219 (1995).........................................................................6, 7, 9

*Bary v. Delta Airlines, Inc.*,
    2009 U.S. Dist. LEXIS 94797 (E.D.N.Y. Oct. 9, 2009)................................3

*Cosgrove-Goodman v. UAL Corp.*,
    2010 U.S. Dist. LEXIS 54825, *8-9 (N.D. Ill. 2010)................................11

*Giannopoulos v. Iberia Lineas Aeras de Espana, S.A. Operadora Sociedad*
    *Unipersonal,* 2011 U.S. Dist LEXIS 82304
     (N.D. Ill. July 27, 2011)..........................................1, 6, 7, 8, 9, 10, 14, 15

*Hilton v. Guyot*,
    159 U.S. 113, 40 L. Ed. 95, 16 S. Ct. 139 (1895).......................................12

*Holocaust Victims of Bank Theft v. Bank,*
    2011 U.S. Dist. LEXIS 54293, 11-12 (N.D. Ill. May 18, 2011)..................12

*In re Am. Airlines, Inc., Privacy Litig.*,
    370 F. Supp. 2d 552 (N.D. Tex. 2005) .......................................................7

*In re JetBlue Airways Corp. Privacy Litig.*,
    379 F.Supp.2d 299 (E.D.N.Y. 2005) .........................................................7

*Iwanowa v. Ford Motor Co.*,
    67 F.Supp.2d 424 (D.N.J. 1999) ..............................................................13

*JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*,
    412 F.3d 418 (2d Cir. N.Y. 2005)..............................................................12

*Kalick v. Northwest Airlines Corp.*,
    2009 U.S. Dist. LEXIS 69462, at *21 (D.N.J. Aug. 7, 2009).......................7

*Kelley v. United Airlines*,
    986 F. Supp. 684 (D. Mass. 1997) .............................................................7

*Narkiewicz-Laine v. Scandinavian Airlines Sys.*,
    587 F. Supp. 2d 888, 890 (N.D. Ill. 2008) ..........................................10, 11

*Onoh v. Northwest Airlines, Inc.*,
   613 F.3d 596 (5th Cir. 2010) ........................................................8

*Panzer v. Cont'l Airlines, Inc.*,
   398 F.Supp.2d 529 (S.D. Miss 2005) .........................................3

*Paraschos v. YBM Magnex Int'l, Inc.*,
   130 F.Supp2d 642 (E.D. Pa 2000) .............................................13

*Raddatz v. Bax Global, Inc.*
   2008 WL 2435582, 2008 U.S. Dist. LEXIS 51661, 6-8
   (E.D. Wis. June 16, 2008) ..........................................................11

*Skydive Factory, Inc. v. Me. Aviation Corp.*,
   268 F.Supp.2d 61 (D. Me. 2003) ..................................................7

*Sompo Japan Insurance, Inc. v. Nippon Cargo Airlines Co., Ltd.*,
   522 F.3d 776 (7th Cir. 2008) ......................................................11

*Sturgeon v. Condor Flugdienst GmbH*,
   2009 ECJ EUR-Lex LEXIS 1053 ...............................7, 8, 14, 15

*Torres v. Southern Peru Copper Corp.*,
   965 F. Supp. 899, 909 (S.D. Tex. 1996) ....................................13

*Travel All Over the World Inc. v. Kingdom of Saudi Arabia*,
   73 F.3d 1423 (7th Cir. 1996) ........................................................8

*Turner Entertainment Co. v. Degeto Film GmbH*,
   25 F.3d 1512 (11th Cir. Ga. 1994) .............................................13

*Underwood v. Hilliard (In re Rimsat, Ltd.)*,
   98 F.3d 956 (7th Cir. 1996) ........................................................12

STATUTES REGULATIONS AND COURT RULES:

Airlines Deregulation Act ("ADA"),
   49 U.S.C. § 41713(b) ..................................................1, 5, 6, 8, 9

Montreal Convention S. Treaty Doc. No. 106-45,
   1999 WL 33292734 ..............................................................1, 10, 11

Warsaw Convention T.S. Doc. No. 876, 1929 49 Stat. 3000 ......................10, 11

14 C.F.R. Part 221 .................................................................................................3

62 F.R. 10758 ........................................................................................................4

OTHER:

Regulation No. 261/2004 of the European Parliament and European
     Council ("EU Regulation 261") ....................................................1, 7, 8, 9, 10, 14, 15

Stephen Breyer, *Constitutionalism, Privatization and Globalization:*
     *Changing Relationships Among European Constitutional Courts,*
     21 Cardozo L. Rev. 1045 (2000) .............................................................14

## INTRODUCTION

Michael Gurevich and Elena Gurevich ("Plaintiffs") filed a putative class action lawsuit against Compagnia Aereas Italiana, SPA ("Alitalia") alleging breach of contract claims based on Alitalia's failure to pay compensation for delayed and cancelled flights as required by Alitalia's contract of carriage and Regulation No. 261/2004 of the European Parliament and European Council ("EU 261") as incorporated therein. Cp ¶¶14-17. As this Court is aware, four other cases founded upon similar contract claims have been filed in this district. In the first-filed case, *Giannopoulos*, Judge Lefkow denied Plaintiffs' motion for reassignment of the five cases to a single judge, but recognized that judicial efficiency would likely occur if "one judge takes the lead on the threshold legal issues." *Giannopoulos v. Iberia Lineas Aeras de Espana, S.A. Operadora, Sociedad Unipersonal*, No. 11 C 775, Dkt #48 Minute Order at 2. Additionally, Judge Lefkow stated, "[a]lthough no other judge will be bound by this court's decision, they will have the benefit of this court's opinion in reaching their independent conclusions on the issues." *Id.*

On July 27, 2011, Judge Lefkow denied Iberia's motion to dismiss and held that: (1) the Airline Deregulation Act does not preempt Plaintiffs' claims; (2) the Montreal Convention does not preempt Plaintiffs' claims; (3) the Air Transport Agreement does not have any bearing on Plaintiffs' claims; (4) Plaintiffs' claims are not barred because they failed to exhaust available remedies in the EU prior to filing suit; and (5) the Court should not decline adjudication based on international comity. *Giannopoulos v. Iberia Lineas Aeras de Espana, S.A. Operadora, Sociedad Unipersonal*, 2011 U.S. Dist LEXIS 82304 (N.D. Ill. July 27, 2011). Three of these five issues are substantially the same as three of the arguments that Alitalia has raised here, and

Plaintiffs respectfully maintain that for the same reasons Iberia's motion was denied so too should this Court deny Alitalia's motion.

This overlap extends to all issues raised by the motion, save one, where Alitalia claims that its general conditions of carriage ("GCC") are inapplicable because of a tariff filed with the Department of Transportation ("DOT"). (Alitalia Br. at 2-8). Alitalia makes this novel and peculiar argument despite the fact that it is wholly unsupported by case law and the DOT's own regulations and statements on the issue. Moreover, Alitalia claims that the tariff supersedes its GCC despite the fact that there is no reference whatsoever to the tariff in Alitalia's GCC. For these reasons, Alitalia's motion should be denied.

## STATEMENT OF FACTS

The relevant facts are set forth in paragraphs 7-36 of the Class Action Complaint.

## ARGUMENT

**I. ALITALIA'S GENERAL CONDITIONS OF CARRIAGE AND DOT REGULATIONS STATE THAT ALITALIA'S CONTRACTUAL RELATIONSHIP WITH PASSENGERS IS CONTROLLED BY NOTICED CONDITIONS OF CARRIAGE, NOT UNNOTICED TARIFFS.**

Alitalia makes the novel argument that its General Conditions of Carriage ("GCC"), which are communicated uniformly to each of its U.S. passengers, are disavowed and precluded by the tariff that Alitalia has filed with the DOT, despite Alitalia's failure to provide any notice of the tariff to passengers. Alitalia cites to no relevant case law in the airline context supporting its argument. Instead, it relies primarily upon cases in the telecommunications and railroad industries which have no applicability in this context.

In the airline context, Alitalia cites three antiquated cases that were all decided before Congress deregulated the airline industry. (Alitalia Br. at 5). Prior to deregulation and reliance on private market forces, airlines may have been allowed to simply file tariffs in order to limit

liability, but that is no longer the case. *See Bary v. Delta Airlines, Inc.*, 2009 U.S. Dist. LEXIS at *43-47 (E.D.N.Y. October 9, 2009) (after domestic air carriers were no longer required to file tariffs, there was no longer a presumption that passengers had constructive notice of the tariff's provisions). Post-deregulation, federal regulations addressing foreign air transportation clearly require that notice must be given conspicuously in a contract of carriage if those provisions are modified by terms incorporated by reference, such as a tariff. 14 C.F.R. 221.107(b) ("Each carrier and ticket agent shall include on or with a ticket or other written instrument given to the passenger, that embodies the contract of carriage, a ***conspicuous*** notice that (1) The contract of carriage may incorporate terms and conditions by reference . . .")(Emphasis added).

Alitalia only cites one post-deregulation decision, *Panzer v. Cont'l Airlines, Inc.,* 398 F.Supp.2d 529 (S.D. Miss. 2005), which is easily distinguished. In *Panzer*, the defendant's first line of defense was its *contract of carriage,* and the tariff was consistent with – *actually a verbatim recitation* of – the provisions in the contract of carriage. In no way does *Panzer* stand for the proposition that unnoticed and contradictory tariff provisions negate and nullify the contract of carriage between an airline and its passengers. Alitalia cites no case law that supports its argument that merely filing a tariff operates as a limitation of liability because there simply is none. It appears Alitalia is the first airline to be so bold as to claim that its publicly available contractual terms are surreptitiously nullified by obscure tariff filings of which customers are provided no notice whatsoever.

Although Alitalia cites as authority select portions of the Notice of Exception from the DOT regarding revisions made to tariff reporting requirements for international carriers, (Alitalia Br. at 5 citing Docket OST 97-2050 at 1), a closer reading of these materials reveals that the DOT did not mean to interfere with the established practice of protecting consumers through

contractual rights provided in the airlines' contracts of carriage. *See, e.g.,* 62 FR 10758, Docket

OST 97-2050. Contrary to Alitalia's representations, the DOT revisions to tariff reporting

explain that passengers' first line of inquiry about their international travel rights is typically to

question the airline itself and consult the travel documentation publicly provided, which typically

contains contractual provisions or refers all passengers to the airline's contract of carriage. 62

FR 10758, 10761, Docket OST 97-2050 ("[T]o the extent that passengers might have questions

about the application or interpretation of certain provisions, it is likely that they would consult

the carrier directly, rather than its tariff."). Indeed, the DOT revisions recognize that the contract

of carriage and related documents are the primary source to provide sufficient notice to

passengers and that a tariff should only provide more detailed rights where the tariff is expressly

incorporated by reference into the contract of carriage. *Id.* ("[T]o the extent that tariffs might set

forth certain material ***greater in detail*** than travel documents, the Department already has an

alternative framework in place to permit its ***incorporation*** into a contract of carriage with

***adequate*** notice to passengers.")(Emphasis added).

Consistent with federal regulations, the DOT endorses a notice regime that is not

premised on the content of undisclosed tariffs filed with the Department. *Id.* ("We are not aware

of particular conditions or issues in any market where continuation of rules tariffs would be

superior to a notice regime."). Furthermore, the DOT does not wish to interfere with the contract

formation that occurs through the contract of carriage. *Id.* ("The graduated system of written

notice and right of immediate inspection for general terms, coupled with direct notice and/or a

right to an immediate explanation of certain more important terms, constitutes a deliberate

balance between the ease of contract formation and the importance of informed assent.").

The DOT's recognition of the primacy of the publicly available and noticed conditions of carriage and related documents is consistent with the purpose of the Airlines Deregulation Act ("ADA"), 49 U.S.C. § 41713.  Since passage of the ADA, and its emphasis on competitive markets, the tariff has little to no relevance to the claims in this action.  Indeed, the DOT no longer *accepts* tariff rules related to the subject matter of this litigation – *i.e.*, rules regarding "Denied Boarding Compensation," "Revised Routings, Failure to Carry and Missed Connections," and "Schedules, Delay and Cancellation of Flights," Def. Ex. B (Attachment B thereto at p. 2) ; *see also* Def. Ex. B at p. 1 & Attachment B thereto at p.1.

A review of Alitalia's General Conditions of Carriage ("GCC") quickly demonstrates that Alitalia's novel tariff defense is inconsistent with the applicable law and betrays a lack of respect for Alitalia's customers, private agreements and market forces in a post-deregulation context. Article II of the GCC – entitled "Applicability" – clearly states that it controls in the context of this action, plainly stating "these G.C.C. apply to all flights or segments of flights performed by the carrier with destinations within or beyond the European Union for which the Carrier's name or identification code appears in the box of the ticket for such flights or segments of flights." Compl. Ex. 2 at Article II.  Alitalia's GCC include **no reference whatsoever** to any tariff on file with the DOT.  Consistently, Alitalia's webpage on "Passenger Rights" includes no reference to any tariffs, but instead directs the costumer, in the context of cancelled and delayed flights, to Article X of Alitalia's GCC.  (Exhibit 1 hereto).  Finally, there is no reference to the tariff on the airline ticket.  (Exhibit 2 hereto).  As Alitalia's GGC neither incorporates the tariff provisions nor even references them, this Court should reject Alitalia's novel argument and deny its motion to dismiss.

## II. PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY THE AIRLINES DEREGULATION ACT.

Plaintiffs' claims are based on Alitalia's affirmative, self-imposed and uniform contractual obligations, applicable to all passengers that travel to and from European destinations. Cp. at ¶¶15-17. Plaintiffs' claims are *not* premised on implied contractual rights or public policies externally created and imposed by the laws of Illinois or any other state. Accordingly, Plaintiffs' claims are not preempted by the Airlines Deregulation Act. *See Giannopoulos*, 2011 U.S. Dist LEXIS 82304 at *9-12.

### A. In *Wolens*, the Supreme Court Explicitly Held That Breach of Contract Claims Are Not Preempted by the ADA.

The ADA preemption clause reads in relevant part, "A *State* . . . may not enact or enforce any law, rule, regulation, standard or other provision having the force and effect of law relating to rates, routes, or service of any air carrier." 49 U.S.C. App. §41713(b)(1) (emphasis added). In its interpretation of the preemptive reach of the ADA, the Supreme Court held unequivocally that "the ADA's preemption prescription bars state-imposed regulation of air carriers, but allows room for court enforcement of contract terms set by the parties themselves." *American Airlines v. Wolens*, 513 U.S. 219, 222 (1995). This holding clearly provides that ADA preemption does not immunize air carriers from breach of contract suits. As the Court explained, "[w]e do not read the ADA's preemption clause, however, to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Wolens*, 513 U.S. at 228.

For breach of contract claims, there is no ADA preemption where claims are confined, "to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Wolens*, 513 U.S. at 233. Further, when an airline communicates

6

contractual terms to its customers – as occurred here when Alitalia communicated its obligation to compensate passengers under EU 261 – there is no State enactment or enforcement of law under the ADA. *Wolens*, 513 U.S. at 228-229 ("terms and conditions airlines offer and passengers accept are privately ordered obligations and thus do not amount to a State's enactment or enforcement of any law, rule regulation, standard or other provision having the force and effect of law within the meaning of Section 1305(a)(1).").

Alitalia erroneously describes the *Wolens* exception as "narrow" and erroneously asserts that Plaintiffs' claims are based on the enlargement or enhancement of the parties' bargain based on external laws or policies, including the European Court of Justice's ("ECJ") interpretation of EU 261 in *Sturgeon v. Condor Flugdienst GmbH*, 2009 ECR 1053 (2009).

Iberia raised these same arguments in *Giannopoulos*, and all of them were rejected by Judge Lefkow. *Giannopoulos*, 2011 U.S. Dist LEXIS 82304 at *9-12 ("Iberia's argument is unpersuasive, however, for it agreed to pay compensation *as established in EU 261*.")(emphasis in original).[1] Just like Iberia, Alitalia agreed in its contract of carriage to pay compensation, "in line with the provisions of EC Regulation no. 261/2004 with respect to passengers" under Article X of the contract of carriage, entitled "SCHEDULES, DELAYS, CANCELLATIONS, DENIED BOARDING." Compl. ¶16. Additionally, for those passengers on flights that were cancelled, Alitalia agreed to pay fixed compensation between EUR 250 and EUR 600 depending on the distance of the flight. Compl. ¶17. As Judge Lefkow reasoned in *Giannopoulos*, Alitalia agreed to pay compensation according to EU 261, as interpreted by the ECJ in *Sturgeon,* which cannot

---

[1] In addition to Judge Lefkow, numerous courts have followed *Wolens* in finding that breach of contract claims are not preempted. *See, e.g., Kelley v. United Airlines*, 986 F. Supp. 684, 685 (D. Mass. 1997); *Skydive Factory, Inc. v. Me. Aviation Corp.*, 268 F. Supp. 2d 61, 62 (D. Me. 2003); *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 318 (E.D.N.Y. 2005); *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 566 (N.D. Tex. 2005); *Kalick v. Northwest Airlines Corp.*, 2009 U.S. Dist. LEXIS 69462, at *21 (D.N.J. Aug. 7, 2009).

be considered external to the contract. *See Giannopoulos*, 2011 U.S. Dist LEXIS 82304 at *9-12.

The only authority Alitalia cites as support for its ADA preemption argument is the Fifth Circuit decision, *Onoh v. Northwest Airlines, Inc.*, 613 F.3d 596 (5th Cir. 2010) (Alitalia Br. at 10). Unlike the Plaintiffs here, the *Onoh* plaintiff was seeking to enforce an international agreement between certain European countries ("Schengen Agreements") that Northwest Airlines had *not* specifically incorporated into its passenger contract. Here, Plaintiffs are simply seeking to enforce a contractual right Alitalia chose to provide its passengers and expressly included in its contract. In a manner very similar to Iberia Airlines in the *Giannopoulos* case, Alitalia has incorporated an obligation to provide compensation under EU 261. Although Alitalia may not agree with the holding in *Sturgeon*, the ECJ, which is the final legal authority on the issues, has interpreted EU 261 to provide compensation for both lengthy delays and cancellations. *Giannopoulos*, 2011 U.S. Dist LEXIS 82304 at *12. Thus, Plaintiffs' claims are not preempted by the ADA.

**B.** **Alitalia Fails to Identify Any State Law or Policy From Which Plaintiffs Derive Their Claims.**

For Alitalia to prevail on its preemption argument and overcome the *Wolens* exception, it must demonstrate that Plaintiffs' claims "derive from the enactment or enforcement of *state* law." *Travel All Over the World Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 (7th Cir. 1996) (emphasis added); 49 U.S.C. App. §41713(b)(1) (as is the norm, preemption clause only applies to "State" law). For purposes of this preemption provision, "State" means, not surprisingly, "a State, the District of Columbia, and a territory or possession of the United States." 49 U.S.C. §41713(a). Alitalia does not even attempt to demonstrate exactly how Plaintiffs' claims are derived from the enactment of enforcement of a "state law," Illinois or

8

otherwise, that would constitute an "enlargement or enhancement" of Alitalia's contract. *See Wolens*, 513 U.S. at 232. Instead, Alitalia attempts to stretch the plain meaning of "state" to include Europe, or as Alitalia phrases, a state "in the international sense." Alitalia's Br. at p. 9.

Alitalia fails to identify any (domestic) *state* law or *state* policy from which Plaintiffs' claims are derived or that Plaintiffs are attempting to use to "enhance or enlarge" their breach of contract claims. Instead, Alitalia erroneously asserts that an international law (EU 261) that Alitalia *affirmatively incorporates* into its contract and the European court decision explaining its application should be given the same effect as a (domestic) state law *externally* imposed for the purposes of ADA preemption. Accordingly, Alitalia is wrong on two counts: one, Alitalia's promise to provide compensation under EU 261 is self-imposed and internal to the passenger contract; and two, EU 261 is simply not a "State" law under 49 U.S.C. §41713(b)(1).

### C.    Preemption Here Does Not Fulfill the Congressional Intent of the ADA.

The Supreme Court stressed that the purpose of the ADA was to promote "maximum reliance on competitive market forces." *Wolens*, 513 U.S. at 230; *see also Giannopoulos*, 2011 U.S. Dist LEXIS 82304 at *6. Further, the Supreme Court observed that market efficiency "requires effective means to enforce private agreements . . . . That reality is key to sensible construction of the ADA." *Id.* When Congress dismantled the prior regulatory framework, "lawmakers indicated no intention to establish, simultaneously, a new administrative process for DOT adjudication of private contract disputes." *Id.* The Department of Transportation "has neither the authority nor the apparatus required to superintend a contract dispute regime." *Id.*

Alitalia's argument contradicts the purposes of the ADA because of the potential anti-competitive effect such an argument would have on the airline industry. If airlines cannot be held to their bargains with passengers, then these agreements are essentially meaningless.

9

Presumably because it anticipates a competitive advantage, Alitalia provides its customers with a contractual mechanism to enforce rights established by EU 261. Without a breach of contract claim, the rights under the contract, pursuant to EU 261, are rendered illusory for U.S. customers, as enforcement in Europe is impractical, given the small value of the claim. It would contravene the pro-competition purpose of the ADA to find that Alitalia's self-imposed contractual obligation is preempted.

## III. PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY THE MONTREAL CONVENTION.

In contending that Plaintiffs' "delay"[2] claims are preempted by the Montreal Convention,[3] Alitalia *completely ignores* the Seventh Circuit and Northern District of Illinois cases directly on point. As Judge Lefkow ruled in *Giannopoulos*, Seventh Circuit law clearly provides that the Montreal Convention is not the exclusive ground for recovery here and only provides an affirmative defense limiting liability at an amount much greater than the compensation sought for each flight in this case. *Giannopoulos*, 2011 U.S. Dist LEXIS 82304 at *15. Judge Lefkow explained: "The answer in the Seventh Circuit is clear: the Warsaw Convention is not the exclusive ground for recovery, and state tort and contract claims, consistent with the Convention, may be brought as well. There is no reason why this would change under the Montreal Convention, for article 29 retains the Warsaw Convention's language from article 24 that claims may be brought 'under the Convention or in contract or in tort or

---

[2] Alitalia does not contend that the Montreal Convention applies to the "cancellation" claims.

[3] Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal on May 28, 1999, entered into force on Nov. 4, 2002, *reprinted in* Treaty Doc. 106-45, 1999 WL 33292734, U.N.T.S. 350 (2000) ("Montreal Convention"). The Montreal Convention replaced the Warsaw Convention and, accordingly, courts look to cases interpreting the latter when determining the Montreal Convention's preemptive effect. *Giannopoulos*, 2011 U.S. Dist LEXIS 82304 at *14 (citing *Narkiewicz-Laine v. Scandinavian Airlines Sys.*, 587 F. Supp. 2d 888, 890 (N.D. Ill. 2008)).

otherwise." *Id.* (internal citations omitted); *See also Sompo Japan Ins., Inc. v. Nippon Cargo Airlines, Co., Ltd.,* 522 F.3d 776, 785 (7th Cir. 2008) ("Article 24 expressly contemplates that an action may be brought in contract or tort.").

Judge Lefkow's ruling is consistent with prior decisions in the Northern District.  In *Narkiewicz-Laine v. Scandanavian Airlines Systems,* 587 F. Supp. 2d 888, 890 (N.D. Ill. 2008), Judge Reinhard ruled:

> This reasoning logically extends to the strikingly similar language of Article 29 of the Montreal Convention.  Accordingly, claims may be brought "in contract or in tort or otherwise" but such claims are subject to an affirmative defense based on conditions and limits of liability set out in the Montreal Convention.

Judge St. Eve reached the same conclusion in *Cosgrove-Goodman v. UAL Corp.*, 2010 U.S. Dist. LEXIS 54825, *9-10 (June 2, 2010):

> [T]he Montreal Convention "does not apply only to actions brought 'under this Convention,' as that would render meaningless the words 'or in contract or in tort or otherwise.'"  Instead, "the plain language of the Convention demonstrates that not all damages actions involving the carriage of passengers, baggage and cargo arise under the Convention."

*See also Raddatz v. Bax Global, Inc.,* 2008 WL 2435582, 2008 U.S. Dist. LEXIS 51661, 6-8 (E.D. Wis. June 16, 2008) ("a complainant may set forth state law claims, but if the Warsaw Convention applies, it will function to limit recovery").

Accordingly, even if Plaintiffs' "delay" claims fall within the scope of the Montreal Convention, these claims are not preempted; instead the Montreal Convention's limitation on liability simply applies.  However, Article 22(1) of the Montreal Convention sets liability limits for passenger delays at 4,150 Special Drawing Rights (approximately $6,657).  Def. Ex. A at p. 37.  This limit is well above the maximum compensation per flight under Alitalia's passenger contract and EU 261 (EUR 600 or approximately $840).  Cp. Ex. 1 at p. 5; Cp. Ex. 2 at p. 2. Therefore, even if applicable, the Montreal Convention's limit on liability is not material.

11

IV.     **THIS COURT SHOULD NOT ACCEPT ALITALIA'S INVITIATION TO ABDICATE ITS JURISDICTION ON PRINCIPLES OF INTERNATIONAL COMITY**

The doctrine of international comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164, 40 L. Ed. 95, 16 S. Ct. 139 (1895). A case upon which Alitalia relies notes that it "has never been well-defined, leading one scholar to pronounce it 'an amorphous never-never land whose borders are marked by fuzzy lines of politics, courtesy, and good faith.'" *JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 423 (2d Cir. N.Y. 2005). At best, the Second Circuit continues, "the doctrine is not an imperative obligation of courts but rather is a discretionary rule of 'practice, convenience, and expediency.'" 412 F.3d at 423.

Accordingly, courts routinely reject defendants' invitations that they decline jurisdiction on principles of international comity, particularly in settings such as this when there is no competing or parallel action in a foreign jurisdiction and the claim is premised on native breach-of-contract law. *See, e.g., AAR Int'l, Inc. v. Nimelias Enters. S.A.,* 250 F.3d 510 (7th Cir. 2001) (after district court dismissed an airplane breach of lease claim because related litigation was ongoing in Greece, Seventh Circuit reversed, finding that the court should not have abstained because action in foreign court would not have affected lessees' obligation to pay rent or keep plane free of liens.); *Underwood v. Hilliard (In re Rimsat, Ltd.),* 98 F.3d 956, 963 (7th Cir. 1996) (In adversary proceeding against debtor's receiver, where simultaneous action was occurring in a foreign court, Seventh Circuit stated that "[c]omity is a doctrine of adjustment, not a mandate for inaction."); *Holocaust Victims of Bank Theft v. Bank,* 2011 U.S. Dist. LEXIS 54293, 11-12 (N.D.

12

Ill. May 18, 2011) ("The potential inconvenience to the corporate Defendants in litigating here would be minimal compared to the potential inconvenience to Plaintiffs, if required to prosecute this action in the Hungarian courts.").

In contrast, the cases proffered by Alitalia, in which courts give credence to issues of international comity, deal with facts drastically different than those at issue in this case. By Alitalia's own admission, the doctrine provides that United States courts should decline to exercise jurisdiction only where a foreign country has a strong interest in enforcing its own law[4] or where another nation has an overriding interest in the dispute.[5] Neither circumstance is present in the case before this Court. Rather, the instant case is a contract dispute between U.S. passengers and an airline with a significant presence in the United States.

Alitalia's desire to have Plaintiffs' claims dismissed out of "deference to the European courts" makes little sense here. (Alitalia Br. at 14). There is no parallel or competing European proceeding. Alitalia's proposal would require shipping Plaintiffs to Europe, *en masse*, to adjudicate individually breach-of-contract claims requiring no specialized understanding of European law or business practice. This argument is nothing more than an attempt by Alitalia to immunize itself from contract enforcement actions by U.S. residents.

---

[4] *See, e.g., Iwanowa v. Ford Motor Co.*, 67 F.Supp.2d 424, 490-491 (D.N.J. 1999) (dismissing the claims of a foreign national seeking reparations from Ford's German subsidiary for sending her to a forced labor camp during World War II, when claims for reparations made by individuals against companies were prohibited by German law); *Paraschos v. YBM Magnex Int'l, Inc.*, 130 F. Supp. 2d 642, 645-46 (E.D. Pa. 2000) (dismissing a securities fraud action pertaining to Canadian registered securities, brought by a purported class of investors who were virtually all Canadian, against predominantly Canadian defendants, concerning a Canadian corporation whose stock was sold only on Canadian stock exchanges).

[5] *See, e.g., Turner Entertainment Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1521 (11th Cir. Ga. 1994) (a dispute turning on complicated issues within the European television market, requiring extensive knowledge of European broadcasting technology and practices, should be decided in a German court as "the salient issues in the case are of great moment to the state of television in Germany and the rest of Europe."); *Torres v. Southern Peru Copper Corp.*, 965 F.Supp. 899, 909 (S.D. Tex. 1996) (in granting a motion to dismiss for *forum non conveniens*, where the plaintiffs, defendants, and witnesses were all from Peru, and the challenged activity and alleged harm also occurred in Peru, the court also utilized the doctrine of international comity in its analysis), *aff'd*, 113 F.3d 540 (5th Cir. 1997).

Judge Lefkow rejected these same arguments in *Giannopoulos*, ruling:

> While EU 261 does provide that each member state shall designate a body to be charged with enforcing the regulation, it also clearly allows aggrieved passengers to pursue their rights in court. *See* EU 261, preamble (22) ("Member States should ensure and supervise general compliance by their air carriers with this Regulation and designate an appropriate body to carry out such enforcement tasks. The supervision should not affect the rights of passengers and air carriers to seek legal redress from courts under procedures of national law."). Although Iberia claims that European enforcement was intended to be exclusive, it provides no support for this contention nor has the court been able to find any.

*Giannopoulos*, 2011 U.S. Dist LEXIS 82304 at *25-26.

Contrary to Alitalia's suggestion in footnote 11, there is no jurisprudential debate in Europe over whether "cancellations" include delays of three hours or more under the EU 261 framework and the European Court of Justice has not "accepted" an appeal on the issue. There is only *one* relevant court and only *one* relevant decision from that court. As Justice Breyer has explained, "the ECJ has final legal authority to interpret EC law that is binding and 'supreme.'" Stephen Breyer, *Constitutionalism, Privatization and Globalization: Changing Relationships Among European Constitutional Courts*, 21 Cardozo L. Rev. 1045, 1051 (2000). There are no lower European Union courts, and the national courts of the member states "may not examine the validity of EC law" and must instead simply submit questions about the interpretation of European Union laws to the ECJ for "preliminary rulings." *Id.* at 1049-50. When those questions are referred to the ECJ, the ECJ does not have any discretion to deny consideration and therefore must consider every question referred. Breyer, *supra*, at 1051.

The ECJ has addressed this issue in only one decision – *Sturgeon v. Condor Flugdienst GmbH*, 2009 ECR 1053 (2009) (Ex. 3 hereto). In *Sturgeon*, the ECJ ruled that EU 261 must be construed so that cancellations include long delays – specifically, delays of three hours or more – and therefore passengers who experience such delays are entitled to the compensation set forth in

14

Article 7, if the conditions of Article 5 are met. *Id.* at 14. The ECJ's ruling was premised on the language of the regulation and the fact that long delays have the same impact on passengers as cancellations. *Id.* at 12-13.

In rejecting Iberia's comity argument in *Giannopoulos*, Judge Lefkow ruled the ECJ's decision in *Sturgeon* is "the binding interpretation of EU 261." *Giannopoulos*, 2011 U.S. Dist LEXIS 82304 at *9. Judge Lefkow recognized that the "ECJ has pending before it a referral that asks the ECJ to reevaluate *Sturgeon*," but noted that "this court will be just as able as a European court to apply the ECJ's forthcoming ruling." *Giannopoulos*, 2011 U.S. Dist LEXIS 82304 at *28. Judge Lefkow also noted that although "European courts are more familiar with EU 261 and its application, … the court will not be faced with an area of law so complicated that declining jurisdiction would be prudent." *Id.*

## CONCLUSION

For the above reasons, Alitalia's Motion to Dismiss should be denied.

August 5, 2011                                        Respectfully submitted,

Jennifer W. Sprengel                                  Hank Bates
**CAFFERTY FAUCHER LLP**                              **CARNEY WILLIAMS BATES**
30 N. LaSalle Street, Suite 3200                      **PULLIAM & BOWMAN, PLLC**
Chicago, IL 60602                                     11311 Arcade Drive, Suite 200
Tel: (312) 782-4880                                   Little Rock, AR 72212
Fax: (312) 782-4485                                   Tel: (501) 312-8500
                                                      Fax: (501) 312-8505
Vladimir M. Gorokhovsky
**GOROKHOVSKY LAW OFFICE, LLC**
6045 North Green Bay Avenue, Suite 2A                 BY: /s/ Hank Bates
Glendale, WI 53209
Tel: (414) 218-1870                                   *Counsel for Plaintiffs and Proposed Class*

15

## <u>CERTIFICATE OF SERVICE</u>

I, Hank Bates, hereby certify that on August 5, 2011, I caused a copy of the foregoing to be electronically filed with the Clerk of Court using CM/ECF, which will send electronic notification to the parties and registered attorneys of record that the document has been filed and is available for viewing and downloading.

/s/ Hank Bates